UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HOD CARRIERS AND GENERAL LABORERS UNION LOCAL 242, AND WASHINGTON & NORTHERN IDAHO DISTRICT COUNCIL OF LABORERS, | CASE NO. C09-1759JLR |
| | ORDER STAYING CASE PENDING ARBITRATION RESOLUTION |
| Plaintiffs, | |
| v. | |
| 3 KINGS ENVIRONMENTAL INC., | |
| Defendant. | |

## I.    INTRODUCTION

Before the court is Defendant 3 Kings Environmental Inc.'s ("3 Kings") motion to

compel arbitration and dismiss pursuant to the Federal Arbitration Act ("FAA") (Dkt. #

16).  3 Kings moves the court for an order compelling arbitration of the contract claim

brought by Plaintiffs HOD Carriers and General Laborers Union Local 242, and

Washington and Northern Idaho District Council of Laborers (collectively, "the Union").

The court, having reviewed the papers filed in support and opposition and having heard

1  the arguments of counsel, GRANTS in part and DENIES in part the motion to compel

2  arbitration and dismiss (Dkt. # 16).  The court grants the motion to compel arbitration but

3  denies the motion to dismiss.  The matter is STAYED pending the conclusion of the

4  settlement procedures set forth in the parties' agreement to arbitrate.

5  ## II.    BACKGROUND

6  **A.    Labor Dispute**

7          The Union represents employees in the construction industry throughout

8  Washington and Northern Idaho.  3 Kings specializes in environmental cleanup,

9  including removal of building materials containing asbestos.  (King Decl. (Dkt. # 8) ¶ 2.)

10 On or about July 10, 2009, the parties entered into an agreement known as the Laborers

11 Compliance Agreement ("LCA"), which incorporates by reference the Western/Central

12 Washington Master Labor Agreement 2007-2010, referred to by the parties as "Collective

13 Bargaining Agreement" or "CBA".  (Peterson Aff. (Dkt. # 20-6) Ex. 1 ("LCA") and Ex. 2

14 ("CBA").)

15         In late July 2009, a dispute arose as to whether Union workers who were referred

16 to work for 3 Kings at the McMicken Elementary project located in Sea-Tac, Washington

17 were required to have a physical before beginning asbestos abatement work on the

18 project.  (King Decl. ¶ 4.)  3 Kings position is that laborers will not be permitted to work

19 performing asbestos-removal duties unless they first obtain a physical showing their

20 ability to perform the duties safely.  (*Id.* ¶ 2.)  The workers that were turned away

21 thereafter filed a grievance through the Union.  Neither party provides the court with a

22

1  copy of the grievance nor do they provide copies of any other document evidencing the

2  precise issue litigated in the grievance procedure.

3  **B.    CBA Settlement Procedure**

4           Article 12, Section Two, of the CBA sets forth the procedures for the settlement of

5  disputes between the parties.  (CBA Article 12, § 2 ("settlement procedures").)  Step One

6  of the settlement procedures requires the parties to attempt to resolve the dispute by

7  referring the matter to "the authorized representative of the Union and the Employer or

8  his authorized representative."  (CBA Article 12, § 2.)  Should the parties fail "to effect a

9  settlement" at Step One, the matter proceeds to Step Two.  (*Id.*)  Step Two provides that

10          [t]he dispute shall be referred to a Board of Conciliation [("the Board")]
            within fifteen (15) working days.  This Board shall consist of two (2)
11          persons who have no direct involvement in the dispute, appointed by each
            party.  If these four (4) persons cannot effect a settlement within seven (7)
12          days after the dispute has been referred to them, the matter shall proceed to
            Step Three.

13  (*Id.*)  Step Three permits the parties to submit the grievance to mediation.  (*Id.*)  If the

14  three previous steps do not result in a settlement of the dispute, the parties are obligated

15  to submit the matter to arbitration to resolve the dispute pursuant to Step Four.  (*Id.*)

16  Finally, the settlement procedures provide that, if the Board is able to reach a decision,

17  "such decision shall be final and binding upon all parties."  (*Id.*)

18          Here, the parties stopped the settlement procedures after Step Two of the process.

19  After failing to achieve a settlement at Step One in the process, on October 26, 2009, the

20  grievance was submitted to the Board of Conciliation.  On the same day, the Board issued

21  a "Finding" as to liability in favor of the Union and against 3 Kings.  (Board Findings

22

1  (Dkt. # 20-5).)  The Board found that "it is the Employers [sic] responsibility to provide

2  and pay for the cost of the physicals."  (*Id.*)  The Board did not address the issue of

3  damages arising out of 3 Kings's refusal to pay for the cost of physicals for workers that

4  had been referred to it.  Despite the absence of any monetary relief awarded by the Board,

5  the Union attempted to collect damages resulting from 3 Kings's refusal to pay for the

6  physicals.  On November 13, 2009, 3 Kings wrote the Union explaining that because the

7  findings of the Board did not include a monetary award, 3 Kings was rejecting the

8  Union's demand for payment.  (King Decl. Ex. C.)

9      On December 11, 2009, the Union filed the instant suit seeking to enforce the

10  "arbitration" award and for damages pursuant to 29 U.S.C. § 185.  (Compl. & Civil

11  Cover Sheet (Dkt. # 1).)  Specifically, the Union requests lost wages and fringe benefits

12  for workers that were turned away at the job site by 3 King because they did not have a

13  physical.  (*Id.* ¶ XIII.)  On January 5, 2010, 3 Kings formally demanded that the Union

14  participate in arbitration pursuant to the AGC Master Labor Agreement.  (Notice of

15  Arbitration (Dkt. # 4).)  The Union again refused to continue with the settlement

16  procedures and 3 Kings brought the instant motion to compel arbitration.

17                          **III.   ANALYSIS**

18  **A.   Arbitration Standard**

19      The district court has jurisdiction under § 301 of the Labor Management Relations

20  Act ("LMRA"), 29 U.S.C. § 185, to vacate or enforce a labor arbitration award.  *Gen.*

21  *Drivers Local Union No. 89 v. Riss & Co.*, 372 U.S. 517, 519 (1963); *Kemner v. Dist.*

22  *Council of Painting & Allied Trades No. 36*, 768 F.2d 1115, 1118 (9th Cir. 1985).  It is

1    not settled in the Ninth Circuit whether the FAA applies directly to labor agreements, as

2    these agreements are typically governed by § 301 of the LMRA.  *See Textile Workers*

3    *Union v. Lincoln Mills*, 353 U.S. 448, 451-52 (1957); *see also Poweragent Inc. v. Elect.*

4    *Data Sys. Corp.* 358 F.3d 1187, 1193 n.1 (9th Cir. 2004) (noting that although the

5    Supreme Court has held that employment agreements are governed by the FAA, it has

6    never definitively concluded that CBAs are within the scope of the FAA).  Nevertheless,

7    the FAA is often used "as a source of principles to guide formulation of a federal

8    common law of labor arbitration under § 301" and the court's disposition of the motion

9    before it is the same whether the court analyzes the question of finality under the FAA or

10   § 301.  *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 40 n. 9 (1987).

11           The FAA provides that written agreements to arbitrate disputes arising out of

12   transactions involving interstate commerce "shall be valid, irrevocable, and enforceable,

13   save upon such grounds as exist at law or in equity for the revocation of any contract."  9

14   U.S.C. § 2.  The purpose of the FAA is to "reverse the longstanding judicial hostility to

15   arbitration agreements . . . and to place arbitration agreements upon the same footing as

16   other contracts."  *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991).  To

17   that end, the FAA divests the district court of its discretion and requires it to resolve any

18   doubts in favor of compelling arbitration.  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S.

19   213, 218 (1985).  The party opposing arbitration bears the burden of showing that the

20   agreement is not enforceable.  *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79,

21   92 (2000).

22

1    Although the term "arbitrate" is not used until the last step in the settlement

2  procedures, it is well established in the Ninth Circuit that an arbitration agreement is

3  simply an agreement to submit a dispute to decision by a third party.  *See Wolsey, Ltd. v.*

4  *Foodmaker, Inc.*, 144 F.3d 1205, 1208 (9th Cir. 1998) (stating that there are no magic

5  words required for an arbitration agreement; it need not say "arbitrate" or "final dispute

6  resolution").  Accordingly, the court considers the finality of the Board's decision in this

7  case pursuant to § 301 but using the FAA as guidance.

8  **B.    Final and Binding**

9    To be subject to this court's review, the Board's written findings must be final and

10  binding.  *Gen. Drivers*, 372 U.S. at 519; *Kemner*, 768 F.2d at 1118 ("a court should

11  refrain from reviewing an arbitrator's work until a final and binding award is issued").

12  Only in the most extreme cases will judicial review of a nonfinal award be proper.

13  *Aerojet-Gen. Corp. v. Am. Arbitration Ass'n*, 478 F.2d 248, 251 (9th Cir. 1973).  To

14  allow judicial intervention prior to the final award would contravene the fundamental

15  federal labor policy of deference to contractual dispute resolution procedures, and would

16  interfere with the purpose of arbitration: the speedy resolution of grievances without the

17  time and expense of court proceedings.  *United Steelworkers v. Am. Mfg. Co.*, 363 U.S.

18  564, 566-68 (1960); *Kemner*, 768 F.2d at 1118; *Aerojet-Gen.*, 478 F.2d at 251.  The court

19  should avoid piecemeal litigation of any claim.  *See, e.g., Cohen v. Beneficial Indus.*

20  *Loan Corp.*, 337 U.S. 541, 546 (1949).

21    To be considered "final" for the purposes of § 301, "an arbitration award must be

22  intended by the arbitrator to be a complete determination of every issue submitted."

ORDER- 6

1  *Millmen Local 550, United Bhd. of Carpenters & Joiners of Am. v. Wells Exterior Trim*,

2  828 F.2d 1373, 1375 (9th Cir. 1987).  Therefore, the Ninth Circuit has held that an award

3  determining liability alone is not reviewable if the arbitrator fails to determine the

4  remedy.  *Millmen*, 828 F.2d at 1376-77.  Here, the Board did not determine a remedy.

5  Instead of continuing through the settlement procedures to determine damages, or

6  resubmitting the matter to the Board for its determination of damages, the Union chose to

7  bring a separate cause of action in this court seeking to "enforce" the arbitration award

8  and for damages.  Thus, the Union asks the court to consider the issue of damages based

9  on the Board's finding of liability.  The Union does not explain to the court, however,

10 whether the Board was asked to consider the remedy but failed to do so, or whether the

11 Board could not reach an agreement on the remedy.  Regardless of the reason for the

12 Board's failure to consider a proper remedy, based on the cases cited above, the court

13 does not consider the Board's decision on liability to be final.  The court therefore

14 remands the matter to the Board for a finding as to an appropriate award of damages.  If

15 the Board is unable to come to an agreement on damages then the matter shall proceed

16 through the settlement process until the parties have reached a final settlement as to both

17 liability and damages.

18                              **IV.    CONCLUSION**

19         For the reasons stated above, the court GRANTS in part and DENIES in part the

20 motion to compel arbitration and dismiss (Dkt. # 16).  The court grants the motion to

21 compel arbitration but denies the motion to dismiss.  The matter is STAYED pending the

22 conclusion of the settlement procedures set forth in the parties' agreement to arbitrate.

1    Dated this 29th day of June, 2010.

2

3

4    JAMES L. ROBART
     United States District Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 8